## BLAKE *v.* RICH.

The fee in land taken for the purpose of constructing a railroad under the laws of this State, remains in the owner of the soil from whom the land is taken, subject to the easement of the corporation, as leased to them by the State.

The exclusive right of property in the land, in the trees and herbage upon its surface, and the minerals below it, remains unchanged, subject, always, to the right of the corporation to construct and operate a railroad over and through it, as authorized by law.

TRESPASS, for wood taken by the defendant from the plaintiff's land, situate in Northumberland. Plea, the general issue.

It appeared that the Atlantic and St. Lawrence Railroad Co. had a strip of land, six rods in width, laid out through the plaintiff's land for the purposes of said road, and that the wood in question was cut upon said strip of six rods wide, and between the track of said road and the boundary lines of said strip on either side, by the defendant, for a person in the employ of said corporation, and there was evidence tending to show that it was used for the company.

The defendant introduced and read, without objection, records and files from the Court of Common Pleas, showing an appeal by the plaintiff from the decision of the railroad commissioners in conjunction with the selectmen of Northumberland, laying out the road over the land of the plaintiff, and assessing his damages ; and it appeared that there was a jury trial, and verdict for the plaintiff on said appeal, and a transfer of the case to the Superior Court ; and it was admitted by the plaintiff that before the questions of law arising upon said case were decided by said Superior Court, the damages, as assessed by the jury, and costs, were paid by said company to the plaintiff. Either party may refer to any records and files of the court in said case.

The court ruled and instructed the jury, that notwithstanding said appeal and verdict, and the payment of the damages, as assessed by the jury, the wood upon said land would be the property of the plaintiff.

The jury returned a verdict for the plaintiff, which the defend-

ant moves the court to set aside, because of said ruling and instructions to the jury.

*Haywood* and *Ramsay,* for the defendant.

*J. W. & G. C. Williams,* for the plaintiff.

FOWLER, J. The only question presented in this case arises upon the instructions of the court to the jury, that the wood upon the plaintiff's land that had been taken for the purpose of constructing a railroad thereon, continued the property of the plaintiff, notwithstanding the railroad corporation, to whose use there was evidence tending to show it had been converted by the defendant, or the person for whom he acted, had paid the plaintiff the damages awarded him for the laying out of their railroad through his land, after an appeal taken from the assessment of the railroad commissioners and selectmen of Northumland, in which town the land was situate. This question involves a consideration of the nature and extent of the interest which a railroad corporation acquires in the land laid out by the railroad commissioners for their road, under the laws of this State. Although such an enquiry, depending as it does in some degree upon the construction of statutes, must necessarily, from the brief period of the existence of railroads, be somewhat novel, and attended with more or less difficulty, from the want of those illustrations which the repeated adjudications of judicial tribunals have thrown upon other questions of that character; yet, so strong are the analogies between the taking of lands for the purposes of a public highway, and for the purposes of a railroad, and such the similarity of language employed by the legislature in the two cases, and so clear and unequivocal the terms used in reference to the rights acquired by railroads, that we think the result of even a limited investigation of the subject could hardly fail to be satisfactory, even if the question had not, as we conceive it has, been already virtually decided by our own courts.

Blake *v.* Rich.

It is well settled, by numerous decisions in this State, that in the land of individuals, laid out for public highways in pursuance of our statute, the public and the public authorities acquire only an easement, or right of way ; a right to employ it for the purposes of constructing, maintaining and using a public highway thereon. The soil and freehold belong to the owners of the land, subject only to this easement or incumbrance. *Makepeace* v. *Warden*, 1 N. H. 16 ; *Avery* v. *Maxwell*, 4 N. H. 37 ; *Mills* v. *Stark*, 4 N. H. 513 ; *Hopkins* v. *Crombie*, 4 N. H. 525 ; *Copp* v. *Neal*, 7 N. H. 276 ; *Leavitt* v. *Towle*, 8 N. H. 97 ; *State* v. *New-Boston*, 11 N. H. 407 ; *Baker* v. *Shephard*, 4 Foster 208.

It has also been deliberately decided, after an able and learned examination of the subject, that the right to use the trees, necessarily cut down from the land in constructing the highway, for the purpose of building and repairing the road, is not acquired by the laying out of a highway, but that the only right acquired in relation to trees growing upon such land is the right of cutting down and removing to a convenient distance, for the use of the land-owner, such and so many of them as it may be necessary to remove in order to make or repair the road in a proper manner. *Baker* v. *Shephard, ubi supra.*

The same doctrine has obtained in other jurisdictions. In *Adams* v. *Emerson*, 6 Pick. 57, it was holden by the Supreme Court of Massachusetts that the owner of land laid out for a turnpike, regarded in that State as well as in this as a public highway, has the exclusive right of property in the land, subject to the easement, or right incident to a public highway, and that the herbage, as well as all trees and mines, are the exclusive property of the owner of the soil.

In *Barclay* v. *Howell*, 6 Peters 498, it was decided by the Supreme Court of the United States, that by the common law the fee in the soil remains in the original owner, where a public road is established over it ; and while it is used as a highway he is entitled to the timber and grass which may grow on the surface, and to all minerals which may be found below it.

Even the right of the public authorities to remove gravel, sand, rocks, or other materials from the travelled part of any highway, without damage or injury to the adjoining land, to any other part of the highway, for the purpose of repairing and grading the same, would seem in this State to depend on the provisions of the statute specially conferring this power upon surveyors of highways. Rev. Stat., chap. 55, sec. 15; Comp. Stat., p. 147, sec. 16.

Unless, then, a railroad corporation, by the laying out of their road over and across the lands of individuals, acquires a higher, more extensive and more exclusive right than the public and the public authorities gain by the laying out of such lands as a public highway, there can be no doubt the trees in controversy continued to be the property of the plaintiff, notwithstanding the award of damages and its payment, and the instructions of the court below were strictly correct.

Does the railroad corporation acquire any such higher, more extensive and more exclusive right? A careful examination of the various statutes authorizing the taking of land for railroads, and a comparison of the language with that of those statutes providing for the taking of land for highways, satisfies us it does not; and we see nothing in the use to which the land is appropriated in the one case and the other, requiring the same phraseology to be differently construed in the two cases. By the theory as well as the letter of the law, the taking in both cases is for the public use, and that use is no more inconsistent with the continuance of the fee in the original owner in the case of a railroad than in that of a highway. The damages are assessed in substantially the same mode in both instances, and are to be the same in both.

The commissioners and selectmen are required to assess the damages sustained by the owners of land by reason of the laying out of a railroad, in the same way and manner as road commissioners in the several counties are required to do, (Comp. Stat., p. 343, sec. 10,) and these latter are required to assess the damages sustained by owners of land as selectmen of towns

are required to assess them (Comp. Stat., p. 140, sec. 7,) and selectmen are required to assess the damages sustained by each owner of the land required for any highway laid out by them, (Comp. Stat., p. 136, sec. 16.)

In *Dearborn* v. *The Boston, Concord and Montreal Railroad,* 9 Foster 185, which was an appeal by a land-owner from the award of damages made to him by the railroad commissioners and selectmen, for land taken for the defendants' railroad, the court said : " The damages, then, which are to be found by a jury on the trial of a case like the one before us, are to be the same which selectmen would assess in a case of taking land for a highway." It would follow, most conclusively, that if the same damages are to be awarded, they must be given for the same injuries sustained, and none other, and that the same rights would be acquired in one case as in the other, as the consequence of the award.

The land-owner can maintain no action for the damages assessed to him, until after the corporation have entered upon the land taken, for the purpose of constructing a railroad thereon. Comp. Stat., p. 344, sec. 17. Why this provision, if, by the laying out of the railroad, anything more than the right of way, which might never be exercised, passed to the corporation ? If the title and estate of the land-owner in the land were divested out of him by the acceptance of the report laying out the road and awarding damages, his right to compensation would be as perfect and his claim therefore as just and reasonable, before as after an entry upon the land for the construction of the railroad.

If the statutes had contained nothing further on the subject than the provisions to which we have already adverted, there could scarcely have been a doubt, that, upon the taking of land for a railroad, only an easement, or right of using the same for the purposes of a railroad, passed to the corporation, the fee remaining in the original owner. But the matter is not left thus. As if to remove every vestige of doubt, far more explicit terms are elsewhere employed on this subject.

By the statute under which the land was taken for the rail-

road, it was not taken by the railroad corporation, but by the State, and no permanent right whatever in the land vested in the corporation under the proceedings for laying out the road and taking the land for its construction, until the State had leased the same to the corporation. In those sections defining the terms and conditions of the lease executed to the corporation by the State, the nature and extent of the interest acquired in the land by the laying out of the road, and the payment to the landowners of the damages assessed, are very distinctly indicated. The land damages are paid by or for the State, and whatever is acquired by the whole proceedings first vests in the State. Then, upon the written application of the corporation therefor, the governor and council, by indenture of lease, under the seal of the State, signed by the governor and certified by the secretary of State, lease and guaranty to the corporation, for a term not less than one hundred nor more than two hundred years, " the right to construct a railroad over said land, for the public use and benefit, with the right of user in the same to pass and repass with their locomotives, cars and vehicles of transportation thereon, and for other usual and necessary purposes of a railroad, as they may be allowed to do by their charter." And the right so leased reverts to the State at the expiration of the term. Comp. Stat., pp. 345, 346, secs. 23, 24. Upon the execution of the lease, and before its delivery, the corporation deposits with the State a sum equal to the whole amount of damages assessed by the commissioners and selectmen for the land over which the railroad is to pass, or releases therefor ; and in case there is any failure of title to the land by the first appraisal and assessment of damages, the railroad corporation is bound to defray the expenses of a reäppraisal, and pay the damages reäppraised. Comp. Stat., p. 346, secs. 26, 27.

Hardly any language could make clearer than these provisions the precise nature and extent of the interest acquired in the land by the laying out of the railroad. Whatever is acquired vests in the State, is by the State leased to the corporation on the receipt of what it cost, and upon the expiration of the

term revests in the State. The lease, therefore, accurately describes this interest. It is, in the language of the statute, simply a right to construct a railroad over the land, with the right of user in the same, to pass and repass with locomotives, cars and vehicles of transportation thereon, and for other usual and necessary purposes of a railroad. This is the whole interest in the land leased or acquired — a mere easement in the land, entirely compatible with the continuance of the fee in the original owner.

In *Dearborn* v. *Boston, Concord and Montreal Railroad*, before cited, although the precise question now under consideration was not raised, the court said, that, by the award of damages, " the corporation acquire the right to construct their road in any suitable and proper manner, for their own convenience and the public accommodation, and the right to vary and change that construction, within the established limits of the road, from time to time forever, until the State resume the right and privilege of the corporation, or until the charter be altered, repealed or annulled."

In *Northern Railroad* v. *Concord and Claremont Railroad*, 7 Foster 195, 196, it was holden that the easement of a railroad in the land over which it was laid out, received by a lease from the State, might be taken from it for the use and benefit of another railroad, upon the appraisal and payment of damages, in the same manner as in the case of a turnpike corporation, a toll bridge, or a ferry, the railroad for whose use it was taken, as well as that from which it was taken, being regarded as public highways under the laws of this State.

It has been holden in Vermont, that where the charter of a railroad corporation provided that the company, upon complying with the conditions on which they might take land for the use of their road, should be " seized and possessed of the land," this did not make them owners of the fee, but only gave them a right of way. *Quimby* v. *Vermont Central Railroad*, 23 Vt. (8 Washb.) 387.

Without adverting to numerous cases in other States, where it

Blake *v.* Rich.

has been holden that the fee in lands taken vests in railroad corporations, all of which it is believed will be found to be based on the peculiar phraseology of the statutes authorizing the construction of the railroads and taking lands therefor; we are clearly of opinion, from the language of our statutes and the authorities cited, that under our laws a railroad corporation possesses under the lease from the State only an easement in the land over which its road may have been laid out and constructed, while the fee — the exclusive right of property — in the land, and in the trees and herbage upon its surface, and the minerals below it, subject always to the easement of the railroad corporation, remains in the original owner.

The instructions to the jury were consequently correct, and there must be

*Judgment on the verdict.*